COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

PHILLIP ZUNIGA,                                    No. 08-08-00314-CR

§

  Appellant,                              Appeal from the

§

V.                                                 243rd District Court

§

THE STATE OF TEXAS,                                of El Paso County, Texas

§

  Appellee.                              (TC# 2007ODO1219)

§

§

**O P I N I O N**

Phillip Zuniga appeals his conviction for felony domestic violence assault causing bodily injury. He was sentenced to 10 years' imprisonment, suspended to 10 years' probation, and fined $10,000. On appeal, he raises two issues challenging the propriety of charging instrument in his prior misdemeanor, domestic violence conviction, as well as the trial court's decision to overrule defense counsel's hearsay objections to police officer witness testimony.

On the morning of December 7, 2006, Officer Jamie Cordero and his partner were on patrol when a dispatcher requested their return to the El Paso Police Department's Central Command office to meet with a woman who wanted to make a criminal report. When the officers arrived, at approximately 8:40 a.m., Officer Cordero observed that the woman's face was red, her left eye and lip were swollen, and she had abrasions on her forehead. When Officer Cordero asked what had happened to her, she appeared nervous and scared. She stuttered as she spoke, and paced with her arms wrapped around her torso.

The woman identified herself as Ms. Gabriela Zamarripa. She told the officers that she has been assaulted the night before by Appellant, her live-in boyfriend. She and Appellant had been out at an El Paso bar the night before. When they got home, the two began to argue about a prior incident when Ms. Zamarripa scratched Appellant's face. They continued to argue as they got out of the car and walked toward the front door of the residence. As Ms. Zamarripa approached the front door, Appellant grabbed her hair from behind and forced her to the ground. After the assault, Appellant collected the couple's cell phones and threw them out into the front yard to prevent Ms. Zamarripa from calling the police.

Based on this information, the officers informed Ms. Zamarripa that they would have to go to the residence to meet with Appellant, and investigate further. Ms. Zamarripa told the officers she did not want to return to the house because she was afraid of Appellant. Officer Cordero continued to talk with Ms. Zamarripa while she calmed down, and eventually she agreed to go back to the house.

When the officers arrived at the residence, Ms. Zamarripa told them they could enter through the front door, which was unlocked. She remained several houses away as the police began their investigation. As Officer Cordero entered the house, he noticed an interior door was damaged. The officers proceeded through the house and found Appellant in a back bedroom. He was immediately arrested and removed from the house. After Appellant was arrested, Officer Cordero took several photographs of the house and of Ms. Zamarripa's injuries. In addition to documenting the injuries to her face, the officers took a photograph of an abrasion on Ms. Zamarripa's knee, and another of bruising on the left side of her abdomen. The photographs of the house depicted the damage to the interior door, in addition to images of two cell phones

which the officers located in the front yard.  One of the phones was broken and had hair hanging off its casing.

Appellant was charged with domestic violence assault, enhanced to a felony offense by a prior domestic violence conviction.  He filed a motion to quash the indictment, which the trial court denied, and was convicted of the charged offense by a jury.

In Issue One, Appellant contends the trial court's ruling denying his motion to quash was in error, and entitles him to reversal.  A trial court's ruling on a motion to quash an indictment is generally reviewed for an abuse of discretion.  *State v. Rivera*, 42 S.W.3d 323, 328 (Tex.App.--El Paso 2001, pet. ref'd).  However, the issue of an indictment's sufficiency is a quesiton of law, subject to review *de novo*.  *State v. Moff*, 154 S.W.3d 599, 601 (Tex.Crim.App. 2004).  Still, when the resolution of that legal inquiry depends on evaluation of witness credibility and demeanor, the trial court is the "judicial actor" in the superior position to decide the issue.  *See Moff*, 154 S.W.3d at 601.

Appellant's motion to quash was based in his contention that the record in his prior conviction indicated his plea bargain and the judgment of conviction were signed prior to the presentment of the information.  According to Paragraph A of Appellant's 2007 indictment for felony domestic violence:

> [[O]n or about the 7th day of December, 2006, . . . [Appellant]] did then and there intentionally, knowingly, and recklessly cause bodily injury to Gabriela Zamarripa, a member of [Appellant's] family or household, by pulling Gabriela Zamarripa's hair with [Appellant's] hand,
> And it is further presented in and to said Court that, prior to the commission of the aforesaid offense, said [Appellant] was previously convicted of an offense against a member of [Appellant's] family or household under section 22.01 of the Texas Penal Code, to wit:  on the 21st day of October, 1999, in cause number 99OC12479 in the County Court at Law No. 6 of El Paso County, Texas,

According to Appellant's motion to quash, the charging instrument in the 99OC12479 case was defective because, the file stamp on the information indicated that it was not filed until "11-20-1999" (November 20, 1999), approximately one month after Appellant plead guilty to the misdemeanor charges. The judgment in the misdemeanor case indicated it was signed on October 21, 1999. Appellant signed the plea bargain agreement in the case on October 21, 1999.

During the hearing on Appellant's motion, defense counsel argued that the felony indictment was void, as enhanced, because the prior family violence allegation contained in the 2007 indictment was based on a plea agreement that was made and signed a month before the information was filed. The trial court concluded that the hand written filing date referring to "11-20" was a misprint by the clerk's office, and that filing date should have been recorded as "10-20." Based on its factual conclusion, the court denied Appellant's motion to quash.

Appellant raised the issue again immediately prior to trial, at which time the State produced evidence by witness testimony to demonstrate that the "11-20" file mark was a misprint. The State's first witness on this issue was Ms. Angie Meyers, a court clerk in the El Paso County Clerks' Office. According to Ms. Meyers, the County's computerized records showed that the complaint and the information were electronically filed with her office on "10-20 of '99."

The State also called, Ms. Michelle Rodarte, the supervisor for the Civil and Criminal Department for the County Clerks' Office. Ms. Rodarte testified that she was working in the County Clerk's office in 1999, and was also involved in creating and implementing the procedures her office uses to file complaints and information in misdemeanor cases. According to Ms. Rodarte, in 1999, once a complaint was entered into the County's computer system, the

computer electronically noted the date on which the information regarding the type of offense, etc., was entered. In addition, during the data input, a clerk would have been required to refer to the paper documents related to the case. Due to the duel documentation, Ms. Rodarte opined, as records custodian for her office, that the electronic date assignment, October 21, or "10-21," in this case, would be more accurate than the "11-21" clerk's notation which would have been created by hand.

Furthermore, Ms. Rodarte testified that the judge in the misdemeanor case noted in writing that Appellant plead guilty to the misdemeanor charged on "10-21-99." She explained that in order for the judge in that case to have been able to make the notation, he would have viewed the complaint and information, which would have been filed and entered in to the court's criminal docket in October, rather than November. As Ms. Rodarte testified: "[if the complaint and information were] filed in November 20th, the documents wouldn't be inside the file" in October when the trial court judge made the "October" notations on the file. Based on the State's evidence, the trial court again concluded that the "11-20" notation was a misprint, and overruled Appellant's motion to quash.

In this instance, the trial court was presented with a significant amount of documentary evidence and witness testimony in support of the State's theory that the "11-21" file mark on the information from the 1999 case was a misprint, and that the balance of the documentation, including the electronic records and the notations made by the judge who handled the case demonstrated that the information was, in fact, on file at the time of Appellant's plea. Because the trial court was in a superior position to make such factual determination we must show appropriate deference to the court's fact findings. *See Moff*, 154 S.W.3d at 601. Based on those

findings, we conclude the indictment was not deficient due to the file mark on the 1999 charging instrument, and further conclude the trial court did not abuse its discretion by denying Appellant's motion. Issue One is overruled.

In Issue Two, Appellant argues the trial court abused its discretion by allowing El Paso Police Officer Jamie Cordero, to testify to what Ms. Zamarripa told him when she came to the police station to make a report the morning after the incident which was the basis for the 2007 indictment. Appellant contends Officer Cordero's testimony was inadmissable on two grounds: (1) that Ms. Zamarripa's statements to him did not constitute excited utterances, and were therefore inadmissible hearsay; and (2) that regardless of the hearsay nature of the testimony, Officer Cordero's testimony runs afoul of the Confrontation Clause. We will address each argument in turn.

We review a trial court's decision to admit evidence under the excited utterance exception to the hearsay rule for an abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003). A trial court does not abuse its discretion by admitting or excluding evidence unless its ruling is outside the zone of reasonable disagreement. *Id*. The "excited utterance" exception to the hearsay rule allows statements, "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX.R.EVID. 803(2); *Arzaga v. State*, 86 S.W.3d 767, 774-75 (Tex.App.--El Paso 2002, no pet.). The law regards an "excited utterance" to be sufficiently trustworthy to be admissible as a hearsay exception, "because it represents an event speaking through the person rather than the person speaking about the event." *Zuliani*, 97 S.W.3d at 595. A statement must meet the three requirements to qualify as an excited utterance: (1) it must be the product of a

-6-

startling event; (2) it was made while the declarant was still dominated by the emotion, excitement, fear, or pain of the event; and (3) it relates to the circumstances of the startling event. *See Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex.Crim.App. 2005). Although the amount of time between the event and the utterance, and the manner in which the statement is made are factors to consider when determining whether the declarant was still under the influence of the event at the time of the statement, they are not dispositive of the issue. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex.Crim.App. 2001).

During an evidentiary hearing, Officer Cordero testified that on December 7, 2006, while on duty at the El Paso Police Department's Central Regional Command he took a report from Ms. Zamarripa. He observed that Ms. Zamarripa's face and lip were red and swollen on the left side, and that her eye was slightly swollen and starting to bruise. She also had a scratch on her forehead. Officer Cordero also testified that Ms. Zamarripa appeared "very emotional," as if she were holding back tears. As Ms. Zamarripa told Officer Cordero how she was injured, she appeared nervous and frightened. The officer stated that he did not detect the odor of alcohol at any time during the interview. After speaking with Ms. Zamarripa, she and the officer went to the residence where she alleged she had been attacked by Appellant. Officer Cordero testified that while he and his partner approached the house, Ms. Zamarripa remained several houses away, and still appeared scared and nervous. After the officers arrested Appellant, they met with Ms. Zamarripa again and took an official report of the attack.

Still outside the presence of the jury, the trial court took defense counsel's hearsay objection under advisement, and Officer Cordero proceeded to recount what Ms. Zamarripa told him about the source of her injuries. Officer Cordero explained that Ms. Zamarripa stated that

she had been assaulted by Appellant the night before. She stated that she and Appellant had an argument on their way home from a night club. Once they arrived home, Ms. Zamarripa got out of the car, and as she walked toward the front door Appellant grabbed her by the hair from behind, and she fell to the ground. While she was still on the ground, Appellant punched her face and kicked her several times. Then Appellant picked her up off the ground, and she ran inside one of the home's bedrooms, shutting the door behind her. Appellant followed her, forced the door open and continued to assault her by choking her and punching her in the face. Ms. Zamarripa told the officer the assault happened between three and four in the morning. She arrived at the police station and told Officer Cordero about the attack at approximately 8:40 later that morning.

In response to Officer Cordero's testimony, Appellant called Ms. Zamarripa to testify at the hearing. She testified that she went to the police station and told the officer she had been assaulted because she was mad at Appellant. According to Ms. Zamarripa, she got in a fight with two other women at the nightclub where she and Appellant had been drinking the night before. She testified that she was angry because Appellant had been flirting with these women, and that all she remembered was fighting in the parking lot outside the bar. She testified that Appellant stopped the fight, put her in the car and took her home. The next morning, Ms. Zamarripa was still angry with Appellant for flirting with the other women, and she claimed she went to the police station and filed the report to get him in trouble. She told the court that the story she told Officer Cordero was a lie.

Based on Officer Cordero's testimony, the trial court overruled defense counsel's objection, and admitted the officer's testimony regarding Ms. Zamarripa's statement under the

excited utterance exception. Appellant contends that Ms. Zamarripa's statement could not be classified as an excited utterance because the amount of time and opportunity for reflection between the alleged assault and the police report.

As stated above, while the passage of time is a factor to be considered when determining whether a declarant remained under the influence of the event when she provided the statement, it is not a dispositive factor. *Salazar*, 38 S.W.3d at 154. In this instance, based on Officer Cordero's account of the circumstances surrounding Ms. Zamarripa's statement, a reasonable person could have concluded that she made the statement while still dominated by the emotion, fear, and pain of the startling event. Accordingly, the trial court did not abuse its discretion permitting Officer Cordero to testify about Ms. Zamarripa's statement under the excited utterance exception to the hearsay rule.

In the alternative, Appellant argues Officer Cordero's account of Ms. Zamarripa's statement is barred by the Confrontation Clause of the United States Constitution. Appellant contends that the Confrontation Clause renders Ms. Zamarripa's statement to police inadmissible because Appellant was not present during the statement, and was "sleeping peacefully at home, oblivious to what was going on." As the State points out, however, the Confrontation Clause is not implicated in this case because the witness, Ms. Zamarripa, was not absent from trial. *See Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004)(noting "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."). In this case the declarant, Ms. Zamarripa, was not only available but did, in fact, testify at trial. Under examination by both the prosecutor and defense counsel, she told the jury

that she had been attacked by two women at a bar, that she went to the police station to get Appellant in trouble because she was angry with him, and that the story she told Officer Cordero was a lie. As such, this case does not implicate the Confrontation Clause as Appellant argues. Issue Two is overruled.

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

March 30, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)